| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Matthew D. Resnik – SBN 182562<br>SIMON RESNIK HAYES LLP<br>510 West 6th Street, Suite 1220<br>Los Angeles, CA, CA 90014<br>Telephone: (213) 572-0800<br>Facsimile: (213) 572-0860<br>Email: matt@srhlawfirm.com | |
| ☐ *Individual appearing without attorney*<br>☒ Attorney for: Debtor(s) | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>    ANGELA D. WALTON,<br><br><br><br><br><br><br><br><br>                                    Debtor(s). | CASE NO.: 2:13-bk-34917-WB<br><br>CHAPTER 13<br><br>**DEBTOR'S MOTION FOR AUTHORITY**<br>**TO SELL REAL PROPERTY**<br>**UNDER LBR 3015-1(p)**<br><br>[No Hearing Required] |
|---|---|

Debtor moves this court for an order authorizing the Debtor to sell the real property, described below, pursuant to the terms and conditions described herein.

1.  Debtor's Chapter 13 Plan (Plan) was confirmed on:  02/18/2015  .

2.  Debtor wishes to sell the real property (Property) located at:
    1114 W. Ralston Street
    Ontario, CA 91762

    The Property is more particularly described in Exhibit "A" attached hereto.

    ☐ Debtor wishes to modify the Plan for early payment of the Plan as described in the *Motion to Modify Plan* submitted by Debtor concurrently with this Motion.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

3.  The sale price of the Property is $545,000.00   (ESTIMATE) .  The following are all of the encumbrances of record against the Property:

   a.  Wells Fargo Bank, N.A. - $561,070.48  - Final Balance to be Negotiated with Lender
   b.  _____
   c.  _____
   d.  _____
   e.  _____
   *(Add additional page if necessary)*

4.  After payment of the foregoing encumbrances and all costs of sale:
   ☐ there will remain the approximate sum of $_____; OR
   ☒ no proceeds will remain.

5.  ☐  (a)  The chapter 13 trustee is hereby authorized to make demand upon escrow for sufficient funds to pay off the Plan with a:
      ☐ 100% dividend to unsecured creditors; OR
      ☐ _____% divided as indicated in the confirmed plan.
   After escrow's payment of the encumbrances listed above, any remaining funds shall be paid directly to debtor.

   **OR**

   ☐  (b)  The chapter 13 trustee is hereby authorized to make demand upon escrow for the balance remaining after escrow's payment of the encumbrances listed above even though the amount is insufficient to pay off the Plan.  The sale is for the fair market value of the Property.

6.  The escrow is being processed by:
   Escrow company name:   Pickford Escrow Company
   Address:               16810 Ventura Blvd.
                          2nd Floor
                          Encino, CA 91436
   Telephone:             (818) 990-6329
   Facsimile:             (818) 986-1083
   Escrow officer:        Kelly Pacheco
   Escrow number:         069-010750-KP

7.  Supporting documents attached to this Motion are:
   a.  Exhibit A – Legal description with street address
   b.  Exhibit B – Escrow instructions and documents
   c.  Exhibit C – Estimated closing statement
   d.  Exhibit D – Schedules I and J of the bankruptcy petition

9.  Debtor agrees to provide to chapter 13 trustee a certified copy of the escrow closing statement within 14 days of the close of escrow as a condition to any approval of this motion.

Date:  11/28/2017                              /s/ Matthew D. Resnik
                                               Attorney for Debtor

I declare under penalty of perjury that the following is true and correct.

Date:  11/28/2017                              /s/ Angela D. Walton
                                               Debtor

Date:  _____                              _____
                                               Joint Debtor

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                    Page 2                    F 3015-1.16.MOTION.SELL.RP

# EXHIBIT "A"

1114 W. Ralston St. Ontario, CA 91762

**The land referred to in this report is situated in the County of San Bernardino, State of California, and is described as follows:**

Parcel No. 1:

Lot 8, Tract No. 9924, in the City of Ontario, County of San Bernardino, State of California, as per Plat recorded in Book 140 of Maps, Pages 19 and 20, in the office of the County Recorder of said County.

Parcel No. 2:

Together with a non-exclusive easement for ingress and egress and driveway purposes over and across the East 8 feet of Lot 7, Tract No. 9924, in the County of San Bernardino, State of California, as per Plat recorded in Book 140 of Maps, Pages 19 and 20, Records of said County.

Assessor's Parcel Numbers(s):  1011-544-03-0-000

# EXHIBIT "B"



**PICKFORD**
ESCROW COMPANY

16810 Ventura Blvd., 2nd Floor
Encino, CA 91436
Phone:  (818) 990-6329    Fax: (818) 986-1083

### SUPPLEMENTAL INSTRUCTIONS AND GENERAL PROVISIONS

**Escrow Officer Name and Title:** Kelly Pacheco, Escrow Officer/Manager
**Property:**   1114 W. Ralston Street
                Ontario, CA  91762
**Seller:**   Angela Walton
**Buyer:**   Andy D. Nguyen
**Title:**   CALIFORNIA TITLE COMPANY
**Order No.:** 410-1914093-64
**Close of Escrow:** On or before  November 14, 2017

**Escrow No.:** 069-010750-KP
**Date:** October 24, 2017

**PICKFORD ESCROW COMPANY, INC. IS LICENSED BY THE DEPARTMENT OF BUSINESS OVERSIGHT, STATE OF CALIFORNIA, LICENSE NO. 963-1656.**

## Terms of Transaction

Buyer will deposit with PICKFORD ESCROW COMPANY, INC.
   initial deposit in the amount of ............................................................................................................ $15,600.00
Prior to close of escrow, buyer will deposit balance of down payment in the amount of ................................ $529,400.00

**TOTAL CONSIDERATION** ............................................................................................................ $545,000.00

(1)   **LEGAL DESCRIPTION:**  LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A" AND MADE A PART HEREOF
      Legal description provided by CALIFORNIA TITLE COMPANY is approved for use in this escrow.  In the event it differs from that shown herein, escrow holder is instructed to correct the legal description in this escrow and on the grant deed above the Seller's signature to match the legal description provided in the preliminary title report.

(2)   **PROPERTY ADDRESS:** 1114 W. Ralston Street, Ontario, CA  91762

(3)   **TITLE ON GRANT DEED SHALL BE CONVEYED TO:** Andy D. Nguyen (vesting to be determined prior to the close of escrow)  Escrow holder is instructed to insert Buyer's vesting and/or name variation in the grant deed, above the Seller's signature, as per Buyer's written unilateral instructions.

(4)   **INSTRUCTIONS/COUNTERS/SUPPLEMENTS/ADDENDA:** Escrow Holder's responsibility is limited to the items listed in Paragraph 29 of the Residential Income Property Purchase Agreement and Joint Escrow Instructions dated August 10, 2017, Addenda and any other Mutual Instructions, AND ALSO Addendum No. 1 dtd 10/7/17. These Supplemental Escrow Instructions shall not amend or supersede the original Residential Income Property Purchase Agreement and Joint Escrow Instructions which the parties herein executed outside escrow.

(5)   **DEPOSIT OF CLOSING FUNDS:** Pursuant to Federal Regulations and the California Insurance Code, all funds deposited for close of escrow by parties hereto should be in the form of a wire transfer, currently deemed to be the safest and most expedient means of depositing funds. An ACH transfer is not equivalent to a wire transfer and therefore will not be accepted under any conditions. Cashier's Checks, Teller Checks or Certified Checks drawn on a California bank may be accepted, but only under the following terms:  (1) Maximum amount of the combined

Seller's Initials:_____/_____                                    Buyer's Initials:_____/_____

**PICKFORD ESCROW COMPANY, INC.**

Date: October 24, 2017
Escrow No.: 069-010750-KP

cashiers checks, teller checks or certified checks must be no more than $50,000.00 (2) Funds must be deposited TWO business days prior to close of escrow. (3) The authenticity of all cashiers checks, teller checks or certified checks must be verified via phone with the makers' bank, prior to close of escrow. Due to privacy laws, most banks will not communicate with 3rd party depositors. Verification will require a 3 way phone call with the buyer, their originating bank and Escrow Holder to establish proof that buyer has deposited a viable check, drawn on their account.

Buyer's Initials:_____/_____

(6)   **ALL CASH TRANSACTION:** This is an "all cash" transaction and no financing will be secured on subject property. Buyer is to obtain their own fire insurance coverage outside of escrow and hereby releases Escrow Holder from any responsibility/liability in connection therewith.

(7)   **PRORATIONS AND PROPERTY TAXES:** Unless otherwise agreed in writing, Real Property taxes, including supplemental taxes, based on the latest tax bill furnished by Seller or Title Company, interest on existing loan if assumed by buyer, Homeowners Association regular assessments, if any, and payments on bonds and assessments assumed by Buyer, shall be PAID current and prorated between Buyer and Seller. In the event that subject property has been conveyed to a new party within the last 18 months or improvements have been performed creating a possible reassessment and NO supplemental tax bill has been issued prior to the close of escrow, Buyer and Seller herein agree that any and all bills received after the close of escrow will be handled between Buyer and Seller outside of escrow of which Escrow Holder shall not be concerned and/or liable, furthermore, Escrow Holder is relieved of any responsibility in connection with the payment or proration of same.

(8)   **COSTS INCURRED:** Buyer and Seller are aware that Escrow Holder may incur certain expenses during the course of processing this escrow which must be paid prior to the close of escrow or at the close of escrow. Parties are further aware that in some situations one or more principals may be entitled to receive a discounted escrow fee. Such costs referred to above, may include, but are not limited to: demand request fees, homeowners' association document fees, notary fees, wire fees, outside sign-up service fees, overnight mail service, mandatory property disclosure report fees, and government agency reports, email documents and copying of loan documents, if applicable. Escrow Holder is authorized and instructed to release funds for payment of such costs, if necessary prior to the close of escrow, from funds deposited into escrow by Buyer. The parties acknowledge and accept that said costs are non refundable, whether this escrow closes or cancels. At the close of escrow, Escrow Holder is authorized to charge the appropriate party for costs incurred and is released from any and all liability in connection with complying with this instruction.

(9)   **THIRD PARTY BILLING:** In the event that Escrow Holder is handed any invoice from Seller or Seller's Agent with regard to any repair bills for correctional work for subject property or invoices for disclosure reports, Escrow Holder is authorized and instructed, at the close of escrow, to pay said bills from Seller's proceeds without any further written authorization from any party hereto.

In the event that Escrow Holder is handed any third party inspection billings from Buyer or Buyer's agent, Escrow Holder is authorized and instructed, at the close of escrow, to pay said bills from Buyer's funds due escrow without any further written authorization from any party hereto.

(10)  **FACSIMILE TRANSMISSIONS:** In the event Buyer and Seller utilize "Facsimile" transmitted signed instructions and/or documentation (by Panafax, Telefax, etc.), Buyer and Seller hereby agree to accept same, and hereby instruct escrow holder to rely upon such documents as if they bore original signatures. Buyer and Seller hereby acknowledge and agree to provide escrow holder, upon request and within seventy two (72) hours of transmission, such instructions and/or documentation bearing original signatures. Buyer and Seller further acknowledge and agree that hard copies of facsimile transmitted documents and/or documents with non-original signatures will not be accepted for recording by the County Recorder, thus making impossible the closing of a customary escrow.

(11)  **TRID & TILA / RESPA INTEGRATED DISCLOSURE REFORM:** On October 3, 2015, regulations were enacted regarding the Loan Estimate (LE) and Closing Disclosure (CD). If requested by lender, escrow holder will prepare a draft copy of the CD, however in most cases, it is ultimately the lender's responsibility to produce the final version of this document and to provide it to the buyer. Escrow fees and charges are contained on both the LE

Seller's Initials:_____/_____

Buyer's Initials:_____/_____

**PICKFORD ESCROW COMPANY, INC.**

Date:  October 24, 2017
Escrow No.:  069-010750-KP

and CD. While every effort is made to precisely disclose these fees, there may be occasions where a change in circumstance requires escrow holder to make an adjustment to allow for costs associated with acts or events which were unknown at the time of the disclosure. This adjustment may delay or impact the timing of delivery of certain lender related documents to the buyer. Escrow holder is not to be held liable for the contents of said LE or CD, except as they relate to fees directly connected to escrow. Buyer agrees to indemnify and hold escrow holder harmless & free of liability in this regard, even if their lender attempts to assign the burden of liability on escrow holder. Additionally, in order to comply with the new regulations, escrow holder may be required to show certain fees as a debit to a buyer on the CD even if the fee is one that the seller has agreed to pay per the terms of the Residential Purchase Agreement & Joint Escrow Instructions (RPA). The fees may include but are not limited to the Owner's Policy of Title Insurance, a simultaneous adjustment for same and County and/or City Transfer Tax. In the case where these fees are to be paid by seller per the terms of the Residential Purchase Agreement & Joint Escrow Instructions escrow holder will show an offsetting debit to seller and credit to buyer. Escrow holder is hereby authorized and instructed to debit Buyer as needed to comply with the new TRID and TILA-RESPA Regulations and as applicable, debit Seller and credit Buyer to reimburse Buyer for the payment of said fees.  **In some cases, the sellers' contact information may be required by buyer's mortgage broker or lender to aid in the completion of either the LE or the CD. If requested of escrow holder, Seller hereby consents to the release of same.**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Seller's Initials:_____/_____                    Buyer's Initials:_____/_____

**PICKFORD ESCROW COMPANY, INC.**

**Date:** October 24, 2017
**Escrow No.:** 069-010750-KP

**BY SETTING FORTH HIS/HER FULL AND COMPLETE SIGNATURE HEREINBELOW AND BY INITIALLING ALL OTHER PAGES, INCLUDING THE LAST FIVE PAGES ENTITLED "GENERAL PROVISIONS", AS INDICATED THEREON, ("EXECUTION") EACH PARTY TO THIS ESCROW ACKNOWLEDGES RECEIPT OF SAME AND AGREES THAT SUCH EXECUTION SHALL BE DEEMED HIS/HER FULL ACCEPTANCE AND APPROVAL OF, CONCURRENCE IN, AND AGREEMENT TO BE BOUND BY, ALL OF THE TERMS, PROVISIONS, CONDITIONS, CONTINGENCIES, INSTRUCTIONS AND AGREEMENTS CONTAINED HEREIN, IN THEIR ENTIRETY.**

SELLER(S):

_____
Angela Walton

BUYER(S):

_____
Andy D. Nguyen

**Date:** October 24, 2017
**Escrow No.:** 069-010750-KP

## Additional Joint Escrow Instructions (General Provisions)

The principals to this escrow (the "Escrow") hereby hand Pickford Escrow Company, Inc. ("Company") a fully executed Purchase Agreement regarding the subject property (the "Purchase Agreement"), which Company may attach to these Additional Joint Escrow Instructions ("General Provisions"). Company is instructed to use any portion of the Purchase Agreement identified as "Escrow Instructions", in their entirety as Buyers' and Sellers' (collectively "Principals") original joint escrow instructions to Company. Except for those paragraphs specifically identified as "Escrow Instructions", no other sections, paragraphs or language in the Purchase Agreement shall concern Company, bind Company, or be deemed to be escrow instructions to Company. These Additional Joint Escrow Instructions ("General Provisions"), along with the paragraphs identified as "Escrow Instructions" in the Purchase Agreement, and any subsequent fully executed supplements or amendments thereto, shall comprise the total escrow instructions upon which Company shall settle and close this Escrow. All capitalized terms not otherwise defined herein shall have the same meanings ascribed to them in the Purchase Agreement.

1. **STOCKHOLDERS.** Notice is given that stockholders of Company are California Real Estate licensees.
2. **I. R. C. 1099.** Principals herein agree to cooperate fully, and to execute and complete all necessary documents submitted to them by Company to allow Company to comply with the income and property tax reporting required pursuant to Internal Revenue Code Section 1099. Company is to follow the requirements of federal law and regulations as they pertain to escrow holders only, and shall not give consultation or advice as to these laws.
3. **FIRPTA.** If Seller is a "foreign person" under the Foreign Investors in Real Property Act, as amended, Section 1445 of the Internal Revenue Code of 1984, said Section requires Buyer to withhold from Seller's proceeds a designated percentage of the gross sales price, unless an exemption applies. Company is released from and shall have no liability, with respect to withholding of funds, advising of the Section's requirements, determining whether Seller(s) is a foreign person under the Section or obtaining a non-foreign affidavit or exemption from withholding under the Section, nor otherwise making any inquiry concerning compliance with such Section by any Principal.
If expressly instructed in writing by any Principal, Company shall withhold a designated percentage from Seller(s) sale proceeds and forward said funds to the appropriate Federal agency within the time frame set forth by law.
FIRPTA FORMS AND INSTRUCTIONS AS TO THEIR USE MAY BE OBTAINED FROM THE PARTIES' ATTORNEYS, TAX CONSULTANT S OR LOCAL INTERNAL REVENUE SERVICE.
4. **CAL-FIRPTA.** Effective January 1, 2003, Company is mandated to provide the transferee (buyer) in this Escrow with a written notice of certain transferee (buyer obligations as set forth in California Assembly Bill 2962 ("Bill"). Company is released from and shall have no liability, obligations or responsibility with respect to the withholding of funds, advising of the Bill's requirements, determining whether Seller(s) is a foreign person under the Bill or obtaining a non-foreign affidavit or exemption from withholding under the Bill, nor otherwise making any inquiry concerning compliance with the Bill by any Principal.
If expressly instructed in writing by any Principal, Company shall withhold a designated percentage from Seller(s) sale proceeds and forward said funds to the appropriate State agency within the time frame set forth by law.
CAL-FIRPTA FORMS AND INSTRUCTIONS AS TO THEIR USE MAY BE OBTAINED FROM PRINCIPALS' ATTORNEYS, TAX CONSULTANTS, LOCAL FRANCHISE TAX BOARD, ONLINE AT WWW.FTB.CA.GOV, BY CALLING (800) 338-0505, OR BY MAIL TO: TAX FORMS REQUEST UNIT, FRANCHISE TAX BOARD, PO BOX 307, RANCHO CORDOVA, CA 95741-0307.

CAL-FIRPTA NOTICE IS AS FOLLOWS:
In accordance with Section 18662 of the Revenue and Taxation Code, a buyer may be required to withhold an amount equal to 3 1/3 percent of the sales price or the amount that is specified in a written certificate executed by the transferor in the case of a disposition of California real property interest by either:
1.        A seller who is an individual, trust, or estate or when the disbursement instructions authorize the proceeds to be sent to a financial intermediary of the seller, OR
2.        A corporate seller that has no permanent place of business in California immediately after the transfer of title to the California real property. The buyer may become subject to penalty for failure to withhold an amount equal to the greater of 10 percent of the amount required to be withheld or five hundred dollars ($500).
However, notwithstanding any other provision included in the California statutes referenced above, no buyer will be required to withhold any amount or be subject to penalty for failure to withhold if:
1.        The sales price of the California real property conveyed does not exceed one hundred thousand dollars($100,000), OR
2.        The seller executes a written certificate, under the penalty of perjury, certifying that the seller is a corporation with a permanent place of business in California, OR
3.        The seller, who is an individual, trust, estate or a corporation without a permanent place of business in California executes a written certificate, under the penalty of perjury, of any of the following:
A.        The California real property being conveyed is the seller's or decedent's principal residence, within the meaning of Section 121 of the Internal Revenue Code.
B.        The last use of the property being conveyed was use by the transferor as the transferor's principal residence within the meaning of Section 121 of the Internal Revenue Code.
C.        The California real property being conveyed is or will be exchanged for property of like kind, within the meaning of Section 1031 of the Internal Revenue Code, but only to the extent of the amount of gain not required to be recognized for California income tax purposes under Section 1031 of the Internal Revenue Code.
D.        The California real property has been compulsorily or involuntarily converted, within the meaning of Section 1033 of the Internal Revenue Code, and that the seller intends to acquire property similar or related in service or use so as to be eligible for nonrecognition of gain for California income tax purposes under Section 1033 of the Internal Revenue Code.
E.        The California real property transaction will result in a loss or a net gain not required to be recognized for California income tax purposes.
The seller is subject to penalty for knowingly filing a fraudulent certificate for the purpose of avoiding the withholding requirement.

The California statues referenced above include provisions which authorize the Franchise Tax Board to grant reduced withholding and waivers from withholding on a case-by-case basis for corporations or other entities.
5.        **PCOR.** In accordance with Sec. 480.3 of the Revenue and Taxation Code, Buyer will hand Company, prior to the close of the Escrow, a

Seller's Initials:_____/_____                    Buyer's Initials:_____/_____

**PICKFORD ESCROW COMPANY, INC.**

**Date:** October 24, 2017
**Escrow No.:** 069-010750-KP

completed Preliminary Change of Ownership Report ("PCOR"), which Company is instructed to forward with the conveyance document to the county recorder. In the absence of such a form, or if rejected for incompleteness by the county recorder, Company will close this Escrow and Company will pay from the Buyer's funds any additional fee required by the county recorder. In the event the lender will not allow this charge to accrue to the buyer, Company is to charge that fee to the Seller. If a PCOR form is not submitted with the conveyance document at close of the Escrow, the county tax assessor's office may send that form to the Buyer after close of the Escrow. Failure to return that form to the county tax assessor's office in the time frame required may result in fines or penalties.

6. **WRITTEN INSTRUCTIONS.** Company is authorized to draft and issue escrow instructions, amendments, supplements or cancellation instructions, per the oral, written, or computer transmitted request and information of the Principals or their designated agents, attorneys or lenders; however, Company shall not act upon, or consider such draft instructions to have any validity, until it is fully executed and delivered to Company by all Principals concerned. No notice or demand to Company shall have any validity or affect in this Escrow until delivered in writing to Company and mutually executed by all parties and Principals affected thereby.

7. **FUNDS.**

(A) All escrow and sub-escrow funds received by the Company will be deposited with other funds in one or more non-interest bearing escrow account of the Company in a financial institution selected by Company. Company and/or its parent company may receive certain direct or indirect benefits from the financial institution by reason of the deposit of such funds or the maintenance of such accounts with the financial institution, and Company shall have no obligation to account to the depositing party in any manner for the value of, or to pay such party, any benefit received by Company and/or its parent company. Those benefits may include, without limitation, accounting, reporting and other services and products of such financial institution. Such benefits shall be deemed additional compensation of Company for its services in connection with the Escrow or sub-escrow. Funds deposited to Company are insured only to the limit provided by the FDIC.

(B) All disbursements from this account shall be made by Company's trust account check.

(C) Company shall not be responsible for any delay in closing this Escrow if funds received by Company are not "good funds" deemed available for immediate withdrawal. Funds deposited by wire transfer or electronic payments are generally available for immediate withdrawal when received by Company's bank. Cashier, certified or teller's checks may be available for disbursement on the business day following the business day of deposit; however, other forms of deposit may cause extended delays in closing the Escrow.

(D) Wiring of funds:

(1) Should any Principal herein elect to wire funds into the Escrow, it is acknowledged and agreed that such wired funds shall not be considered "good funds" received until such time that Company receives notification from Company's receiving bank that the wired funds are received and available for immediate withdrawal.

(2) At close of the Escrow, should any Principal herein instruct Company to wire funds from the Escrow to an entity of Principal's choice, it is acknowledged and agreed that Company will not assure nor be responsible in any way for the length of time the wiring process requires from the point in time of sending the wire to receipt notification of Principal's receiving entity.

(3) At close of the Escrow, funds may not be disbursed after confirmation of recording for up to 24-48 hours due to wire transfer cut-off times. Company must be in receipt of funds prior to disbursement.

(E) All funds disbursed from the Escrow will be issued jointly if there is more than one designated payee, unless Company receives written instructions to do otherwise from all designated payees prior to deed recordation.

(F) All funds and documents sent from the Escrow will be mailed regular first-class mail; however, Company has the option, at Company's sole discretion, to send same certified, registered, overnight or by messenger, and charge the account of the benefiting Principal the actual cost of same.

(G) In the event Company disburses more money to, or for the benefit of, any Principal herein than they are entitled to receive, said Principal does agree to reimburse and/or repay to Company the amount of said overpayment within _____ after demand is made by Company. After five (5) days, interest shall be paid to Company at the rate of ten percent (10%) per annum. In the event legal proceedings are necessary to collect said money, said Principal agrees to pay all charges, court costs and attorney's fees incurred thereby. If Escrow has not closed at the time of the subject disbursement, Company shall have the right to offset the amount wrongfully disbursed from the amounts due to the subject Principal at the close of the Escrow.

(H) Company is authorized to accept and deposit in Escrow, funds and/or documents delivered to Company by a Principal, broker, agent or other third party, on behalf of any Principal herein. Company shall not be held liable for the sufficiency or correctness as to form, authenticity, manner, execution or validity of any document deposited in this Escrow, and Company's duties shall be limited to the safekeeping and disposition of same pursuant to Company's escrow instructions.

(I) Any instruction to Company instructing Company to release any funds held in the Escrow, prior to close of Escrow, MUST be executed before a Notary Public.

(J) In the event that Company is handed any invoice from any Principal or Principal's Agent with regard to any repair bills for correctional work to the subject property or invoices for disclosure reports, Company is authorized and instructed, at the close of the Escrow, to pay those bills from that Principal's proceeds or funds deposited with Company without any further written authorization from that Principal.

8. **PRORATIONS.**

(A) For prorating purposes, Buyer is deemed to own the property the full day on the date of closing, regardless of the time of day the grant deed or conveyance document is actually recorded. Prorations shall be made on a 360-day year (30-day month).

(B) Company shall prorate property taxes for the current fiscal year based on the most recent information furnished to Company by Principals' title insurer. Company shall not be required to estimate tax proration prior to its receipt of such tax information.

(C) Principals hereby acknowledge that the county tax assessor may reassess the taxable value of the subject property after close of Escrow and issue a supplemental tax bill to the new owner. Company shall not be concerned with that supplemental tax bill.

(D) In the event Seller retains possession of the property after the close of Escrow in connection with a Seller leaseback, Company is instructed to prorate as instructed by Principals.

(E) **COMPANY SHALL PRORATE RENTS BASED ON THE WRITTEN RENTAL STATEMENT DELIVERED TO COMPANY BY SELLER, AND PRORATE AS IF SELLER HAS COLLECTED ALL RENTS THAT HAVE COME DUE PRIOR TO CLOSING. COMPANY SHALL DEBIT SELLER AND CREDIT BUYER ANY TENANT DEPOSITS SET FORTH IN SAID RENTAL STATEMENT.**

(F) Company shall prorate interest on notes secured by trust deeds of record on the basis of any beneficiary statement received by Company. If the lender holds impounded funds, Buyer shall be charged and Seller credited with the full amount per said beneficiary statement.

(G) Company shall prorate homeowner's association dues as per statement received by Company.

(H) In the event that the subject property has been conveyed to a new party within the last 18 months or improvements have been performed creating a possible reassessment and NO supplemental tax bill has been issued prior to close of the Escrow, Principals herein agree that any and all

Seller's Initials: _____/_____          Buyer's Initials: _____/_____

PICKFORD ESCROW COMPANY, INC.

bills received after close of the Escrow will be handled between Principals outside of the Escrow and Company shall not be concerned and/or liable for, and is relieved of, any responsibility in connection with the payment or proration of same.

9.    **TITLE.**

(A) Company is authorized to immediately open an order for a title search. If the Principals do not expressly specify a title insurance company at the time the Escrow is opened, Company shall initiate and open a title order at any reliable title company in the county in which the property is located.

(B) Company is authorized to use the selected title company as a "sub-escrow" agent for the handling of funds and documents in this Escrow. Company is to comply with all "sub-escrow" agent's instructions and requirements, and Company is authorized to deliver funds or documents to said "sub-escrow agent" at any time during the course of the Escrow, or after the close of Escrow, that Company deems appropriate. The Principals agree to pay the fee for such "sub-escrow service".

(C) On credit lines, a freeze letter may be required by the lender and title company in order to freeze the account. If a signed freeze and close letter is not deposited in the Escrow in a timely manner, title may, at the time of recording and close of the Escrow, hold additional funds or proceeds until verification that the line of credit is closed, which may delay delivery of final funds.

(D) Pursuant to paragraph 12 of the California Residential Purchase Agreement and Joint Escrow Instructions, entitled "Title and Vesting", if applicable, Principals acknowledge that the CLTA/ALTA Homeowner's Policy of Title insurance, or any other title insurance requested by Principals, to be issued by the insuring title company, shall be delivered directly from the designated title company to the appropriate party after the close of the Escrow. Principals agree that matters regarding that title insurance are between the insuring title company and the designated Principal and not Company.

10.    **PROPERTY CONDITION.** Company will make no physical inspection of the subject real property or personal property and Principals acknowledge that Company makes no representation as to the condition of same, and Company is not to be concerned with nor liable for the condition of same.

11.    **DISCLOSURES/WARRANTIES.** Company shall not be concerned with nor responsible for the giving of any disclosure, warranties or warnings as required by Federal, State or local law.

12.    **PRIVACY POLICY.** Company's business is to process escrow transactions. To process this Escrow, we collect information about Principals, such as Principals' names, addresses, telephone numbers, social security numbers and other information about Principals' transaction including the identity of the real property that Buyer is buying or financing. We obtain a copy of various documents, including, but not limited to, deeds, notes and trust deeds involved in Principals' transaction. This information may be obtained from Principals or other entities Principals have selected, such as Principals' attorneys, lenders, title insurance companies, real estate agents and/or brokers, homeowner's associations or insurance agents. The title insurance company associated with Principals' transaction will request a Statement of Information from Principals, and from that completed form it will obtain information from the public records about Principals and the real property that is the subject of Principals' transaction; much of that information is given to escrow by the title insurance company in the form of a preliminary title report or other documents. During the course of escrow we may receive additional information from various third parties including appraisals, credit reports, land surveys, credit card statements and bank account numbers. THIS COMPANY DOES NOT SHARE ANY OF THIS INFORMATION WITH ANY OTHER ENTITY, PERSON OR COMPANY FOR MARKETING PURPOSES. The privacy laws do permit some sharing internally and with nonaffiliated third parties in order to carry out and service Principals' transaction, for institutional risk control, and to provide information to governmental, judicial and law enforcement agencies that have provided appropriate legal documentation. We restrict access to nonpublic personal information about Principals to those employees who need the information to process and complete Principals' transaction. We maintain physical, electronic and procedural safeguards that comply with law to guard Principals' nonpublic personal information. We reinforce Company's privacy policy with our employees.

13.    **FORGERIES.** Company shall not be liable or responsible for any loss that may occur by reason of forgeries or false representations made by or involving third parties or Principals to this Escrow. Company will not verify the authenticity of any signatures in this Escrow, and Company shall not be liable or responsible for making any determination as to the legal competency of any Principals executing escrow documents.

14.    **CANCELLATION OF ESCROW.**

(A)    Any Principal requesting Company to cancel this escrow shall file notice of demand to cancel (a "Cancellation Demand") with Company in writing. Upon receipt of a Cancellation Demand, Company may suspend performance of its escrow duties and issue written cancellation instructions, by mail, to all Principals ("Cancellation Notice"). Upon Company's receipt of original executed cancellation instructions from all Principals, Company shall disburse funds and documents pursuant thereto and this escrow shall be canceled.

(B)    If, after a Cancellation Notice has been sent, cancellation instructions executed by all Principals are not received by Company, Company is authorized to comply with the Cancellation Demand, cancel the Escrow and distribute any money held in the Escrow, less any fees and charges as provided herein, pursuant to the Cancellation Demand. Notwithstanding anything to the contrary provided herein, Company shall not distribute any money held in the Escrow if written objection is received from the Principal not making the Cancellation Demand within Ten (10) calendar days of the delivery of a Cancellation Notice from Escrow Holder to the other party. Escrow Holder, at it's discretion, may nonetheless require mutual cancellation instructions. In the event written objection is received in a timely manner, Company may refuse to take any further action in the escrow and may file an action in Interpleader, pursuant to paragraph 25.

(C)    If this Escrow does not close by the Close of Escrow date set forth herein, either Principal may file with Company a written demand ("Demand to Perform") that the other Principal perform. Company shall immediately mail the Demand to Perform to the other Principal, and if the Escrow is not closed within 5 days of the mailing of the Demand to Perform, a Cancellation Demand may be sent to Company, which Demand may be complied with at the discretion of Company. Should the Escrow be cancelled pursuant to this paragraph, Company shall distribute any monies held in the Escrow, less any fees and charges as provided herein, pursuant to the Cancellation Demand.

(D)    If there is no written activity by a Principal for any twelve-month period after the Close of Escrow date set forth above, Company may, at its option, terminate its agency relationship with Principals and cancel this Escrow, returning all documents, monies or other items held to the respective parties who deposited those documents, monies or other items in the Escrow, less any fees and charges as provided herein.

In the event of any cancellation of the Escrow pursuant to this paragraph, Company may return all documents or funds delivered to Company by any lender, less any fees due Company.

15.    **CANCELLATION COSTS.** In the event of cancellation of this Escrow, Principals hereto expressly agree to pay Company a reasonable escrow fee as compensation for services performed, together with all costs incurred. Those cancellation costs and fees shall be paid pursuant to cancellation instructions. Only upon payment to Company's fees and costs is Company obligated to disburse funds and documents to the respective Principals and deem this Escrow canceled, and until such time Company holds a lien upon the right, title and interest of each of the Principals' escrowed documents and funds.

16.    **CLOSING.** If this Escrow is not in a position to close upon the closing date set forth herein, and demand is NOT made by any principal to cancel, Company is to continue processing to close this Escrow when all the conditions of this Escrow have been complied with. But, if on the closing

Seller's Initials:_____/_____            Buyer's Initials:_____/_____

**PICKFORD ESCROW COMPANY, INC.**

Date: October 24, 2017
Escrow No.: 069-010750-KP

---

date, or any date thereafter, written demand is made by any principal to cancel this Escrow, Company is to act in accordance with paragraph 14, above.

17.      **RESIGNATION.** Company may, at Company's sole option, and without liability to Principals or third parties, give written notice to Principals and resign from this Escrow. Company shall be entitled to all costs and charges incurred by Company prior to resignation. The balance of any funds, property and or documents shall be returned to the parties who deposited same or forwarded to an escrow agent as mutually designated in writing by Principals.

18.      **CUSTODIAL ACCOUNTING FEE.** Company may withdraw and pay to itself a $50.00 monthly custodial accounting fee from any Principal's funds held in this Escrow (1) that are not claimed, disbursed or cashed within sixty (60) days after closing or cancellation, or (2) any time Principals hold this Escrow in suspense for a period of more than sixty (60) days due to a dispute between the Principals or due to Principals' failure to execute a mutual escrow instruction concerning funds disbursement.

19.      **FEE DISCOUNTS.** PRINCIPALS HEREBY ACKNOWLEDGE AND AGREE THAT IN SOME SITUATIONS, ONE OR MORE PARTIES TO THIS ESCROW MAY RECEIVE A DISCOUNT ON THE ESCROW FEE.

20.      **ARCHIVE/PROCESSING FEE:** All parties are made aware that escrow holder will charge each party the sum of $80.00 as an "archive/processing fee". Said fee covers the cost of storing and maintaining the escrow file for the required 5 years after the close of escrow.

21.      **SIGNATURES.** A Principal's signature on any document or instruction drawn or delivered into the Escrow shall indicate and evidence such Principal's full understanding of and unconditional approval of same, and shall further indicate that they have received a true copy of same.

22.      **RECORDING.** Company is authorized and instructed to record any documents delivered to Company if necessary or proper for the issuance of the policy of title insurance. Recording fees shall be charged to the account of the benefited Principal. As to any documents delivered to Company, and or drawn by another, Company shall not be responsible for, liable for, or concerned with the sufficiency, authenticity or correctness of same.

23.      **MATTERS OF MEMO.** Company is expressly instructed not to act upon or be concerned with or liable for (i) those items designated in Principals' escrow instructions as "matters of memo" or "memoranda" between the Principals, nor (ii) any other agreement between the Principals not expressly addressed to Company in the form of an escrow instruction for Company's performance.

24.      **COUNTERPARTS.** All escrow instructions drawn by Company may be executed in counterparts, each of which shall be deemed an original regardless of date of execution or delivery, and all together shall constitute one and the same document.

25.      **INTERPLEADER.** Principals herein acknowledge that Company has an absolute legal right to file a court action in interpleader. In the event such an action is filed, Principals herein jointly and severally agree to pay escrow fees and title fees, court costs and litigation expenses, including attorney's fees, incurred in connection therewith. Upon filing of such action, Company is fully released and discharged from any further performance of duties under the terms of this Escrow.

26.      **USURY/ENCUMBRANCES.** Company is not to be concerned with any question of usury in any loan or encumbrance involved in the processing of this Escrow and Company is hereby released from any responsibility or liability therefore.

27.      **BENEFICIARY DEMANDS.** Company is expressly relieved of any liability or responsibility for the correctness of beneficiary's demands or beneficiary's statements delivered into this Escrow by encumbrance holders, and Principals agree to be solely responsible and hold Company harmless for any discrepancies or losses accruing from same.

28.      **SHORT PAY:** If a Principal in this Escrow should negotiate a "short pay" demand with a lender holding an encumbrance against the subject property, Company shall not in any way be liable for or concerned with any legal or tax consequences that the Principal may incur as a result of that short pay. Company is to pay the lender's beneficiary's demand as presented to Company.

29.      **LOAN.** Principals herein acknowledge that Company is not involved in loan processing or any terms and conditions contained therein and will not advise nor give any opinion as to loans, loan programs, loan related fees, etc., and therefore, Company shall not be concerned with the terms or conditions of any loan or the content of loan documents as may be secured by a Principal to complete this transaction, other than to receive those documents into Escrow, hand to the Principal for execution, and package and return executed documents per the lender's instructions.

Company is instructed to act according to the lender's written instructions to Company, UNLESS Company determines that such instructions are contrary or detrimental to Company's accepted escrow practices, policies and procedures.

30.      **DOCUMENT RETENTION.** Company may destroy or dispose of all documents pertaining to this Escrow upon the expiration of five years from the date of close of Escrow or Escrow cancellation, without notice to Principals.

31.      **CONFLICTING INSTRUCTIONS.** If Company receives unilateral or conflicting instructions from Principals, oral or written, Company is no longer obligated to continue performance of Company's duties. Company may withhold documents and funds held in Escrow, until concurring mutual instructions are received from Principals, or Company receives a final order from a court of competent jurisdiction.

32.      **EXTRAORDINARY SERVICES/FEES.** Company may charge the Principal benefited, an additional fee(s) over and above Company's customary escrow fee, for escrow services rendered that Company considers extraordinary or unusual or not within the range of Company's customary escrow processing. Said fee(s) shall be disclosed to the Principal(s) to be charged prior to the close of the Escrow.

33.      **FEES.** Escrow, title and recording costs are to be charged to the Principals' respective accounts, as Company deems are customary in this County, unless Company is instructed to do otherwise in writing.

Buyer and Seller are aware that Company may incur certain expenses during the course of processing this Escrow which must be paid prior to the close of Escrow or at the close of Escrow. Such costs may include, but are not limited to: demand request fees, homeowners' association document fees, notary fees, wire fees, outside sign-up service fees, overnight mail service, mandatory property disclosure report fees, government agency reports, email documents and copying of loan documents, if applicable. Company is authorized and instructed to release funds for payment of such costs, if necessary prior to the close of Escrow, from funds deposited into Escrow per the agreement of Principals. Principals acknowledge and accept that said costs are non refundable, whether this Escrow closes or cancels. At the close of Escrow, Company is authorized to charge the appropriate Principal for costs incurred and is released from any and all liability in connection with complying with this instruction.

34.      **SEVERABILITY.** In the event any instruction in this Escrow is held invalid by judicial proceedings, the remaining shall continue to be operative and enforceable.

35.      **LEGAL/WITNESS FEES.**

(A) Should any legal action arise between a Principal to this Escrow and Company, in any matter in connection with this Escrow, and Company prevails, Company shall be entitled to reimbursement of attorney's fees and costs.

(B) The Principals herein jointly and severally agree to indemnify Company for any legal fees and costs Company may incur, which arise from any nonjudicial dispute or legal action between the Principals hereto or by any third party to the Principals' transaction.

(C) Any fees for legal consultation incurred by Company in order to process this Escrow shall be reimbursed to Company upon the close of Escrow by charging the account of the Principal or Principals benefiting.

(D) Other than proceedings in which Company is a party, if it becomes necessary that any of Company's officers or employees appear in any legal or administrative venue to testify as a witness in regard to this Escrow, Company shall be paid by the Principal demanding such appearance, a fee of $50.00 per hour and all out of pocket costs, including, but not limited to mileage at .34 cents per mile. That hourly fee shall be paid in advance and

---

Seller's Initials:_____/_____                              Buyer's Initials:_____/_____

**PICKFORD ESCROW COMPANY, INC.**

shall include time spent traveling to and from and testifying at such venue. Company shall also be entitled to any other fees or costs allowed by law, and should the statutory rates allowed increase, those new amounts shall apply.

36.     **STANDARDIZED FORMS.** Company is authorized to use any standardized, preprinted form in order to comply with these instructions. Company is authorized to use Company's own form or any form produced by any reliable forms company or any title company. Excepting Company's own form, Company shall not be liable for the correctness or sufficiency of such standardized preprinted forms.

37.     **BULK SALE/MOBILE HOME.** If this Escrow concerns a "bulk sale" or a "mobile home", Company is authorized and instructed to strictly conform to all state and federal laws as they pertain to escrow holders, regardless of any conflicting instructions given to Company by the Principals herein.

38.     **REFINANCE.** If this is a refinance escrow with an institutional lender, the borrower herein acknowledges that only the borrower shall sign these instructions and that the lender will submit escrow instructions on its own form, which Company is instructed to fully comply with.

39.     **CLOSING STATEMENT.** If within five (5) days after the delivery of a closing statement by Company to any Principal hereto, that Principal fails to notify Company of any objections to the statement, the statement shall be deemed to be correct and agreed to by the Principal receiving it.

40.     **LEGAL RELATIONSHIP.** It is agreed by the Principals that insofar as Company's rights and liabilities as escrow holder are concerned, this transaction is an escrow and not any other legal relationship.

41.     **OTHER TRANSACTIONS.** Company has no duty to notify any Principal hereto as to any sale, resale, loan, exchange, or other transaction involving any property that is the subject of this Escrow, or of any profit realized by any person or entity in connection therewith, regardless of the fact that such transaction may be handled by Company, or another, in this Escrow or in any other escrow. Furthermore, the Principals herein agree that Company's duty to them is limited to Company's performance of the instructions to Company and that Company has no responsibility to notify any Principal to this Escrow of any other transaction of which Company might have knowledge and which concerns the subject property herein, or any profit realized by any Principal or third person in connection therewith.

42.     **LANGUAGE.** This Escrow will be processed in the English language. Should any Principal elect to use a language translator to assist them in understanding the escrow process, or any documentation that is a part of this Escrow, that language translator will be selected and provided by the Principal in need of such assistance. Company will not provide language translation services and will not be liable or responsible for the correctness of any language translator's interpretation of the escrow process or of any documentation that is a part of this Escrow.

43.     **EXPERT ADVICE/ESCROW DUTIES.**
THE PRINCIPALS HERETO ACKNOWLEDGE AND UNDERSTAND THAT:

(A) SHOULD A PRINCIPAL HERETO HAVE ANY QUESTIONS CONCERNING THE SIGNING OF DOCUMENTS, THE PREPARATION AND LEGALITY OF THESE INSTRUCTIONS OR THE TAX CONSEQUENCES OF THIS TRANSACTION, EACH IS ADVISED TO CONSULT THEIR OWN ATTORNEY OR FINANCIAL ADVISOR. COMPANY'S PERSONNEL SHALL NOT GIVE ADVICE OF ANY NATURE.

(B) THE PARTIES HERETO ACKNOWLEDGE THAT COMPANY IS A NEUTRAL THIRD PARTY AGENT, AND COMPANY'S RESPONSIBILITIES AND DUTIES TO PRINCIPALS ARE LIMITED TO FULLY EXECUTED MUTUAL ESCROW INSTRUCTIONS, AND ANY FULLY EXECUTED MUTUAL SUPPLEMENTS OR AMENDMENTS THERETO.

44.     **FEE DISCLOSURE:** Escrow Fees for Purchase and Sale Escrows are typically calculated with a $150-$600 base for buyer and seller, plus a $1.50 - $2.25 per thousand of sales price with a $750-$1,500 minimum per side. Escrow Fees for Refinance and/or Loan Escrows typically range from $450 to $1.00 per $1,000 of loan amount. Document Preparation and Processing range from range from $200 to $1200.

45.     In accordance with Section 3024 of H.R. 3221 (Housing and Economic Recovery Act of 2008) Escrow Holder hereby accepts responsibility of obtaining the affidavit of no foreign status and Tax Identification Number for Seller herein. Agents and/or Brokers are hereby released from responsibility for obtaining same.

46.     **ELECTRONIC SIGNATURES:** In the event escrow holder is provided with an electronically signed Residential Purchase Contract and Joint Escrow Instructions, Counter Offer(s), Addenda, supplemental instructions, escrow amendments, or any other document related to the close of escrow, escrow holder is authorized to rely on same as if it bore original signatures. Buyer and Seller acknowledge that documents with non-original signatures will not be accepted for recording by the County Recorder.

47.     **RELEASE OF FULL/MASTER HUD:** Buyer and Seller are made aware that an REO Seller will require a copy of the Master HUD (Buyer and Seller side) at the close of escrow. Buyer and Seller are further made aware that a Seller's short sale lender(s) will require a copy of the Master HUD at the close of escrow. Escrow holder is authorized in the aforementioned situations to release the full HUD to the REO Seller or Short Sale Lender(s) as required.

Seller's Initials:_____/_____                          Buyer's Initials:_____/_____

**PICKFORD ESCROW COMPANY, INC.**

**Date:** October 24, 2017
**Escrow No.:** 069-010750-KP

**BY PRINCIPALS' SIGNATURES BELOW, THEY ACKNOWLEDGE THAT THEY HAVE READ, UNDERSTOOD AND ACCEPT ALL ADDITIONAL JOINT ESCROW INSTRUCTIONS SET FORTH ABOVE.**

Dated: _____

_____
Angela Walton

Dated: _____

_____
Andy D. Nguyen

## NOTICE AND ARBITRATION AGREEMENT

**Resolving Disputes – Arbitration Agreement:**

In this Arbitration Agreement, "Company" means Pickford Escrow Company, Inc., and "I", "me", and "my" means the undersigned customer or customers, individually and jointly.

I understand that I am a valued customer of Company and agree to contact Company immediately, in writing or by telephone, if I have a problem with the services provided to me. Company will use its best efforts to work with me to resolve any problems that I may have. If Company and I cannot arrive at a mutually agreeable solution, I agree that any dispute between me and Company, regardless of when it arises or arose, will be resolved using the following arbitration procedures.

**Disputes:**

A dispute is any unresolved disagreement between Company and me that in any way arises out of or is related to any of the services provided by Company. A dispute includes, but is not limited to, any closing claim or controversy of any kind, including those based on broken promises or contracts, closing charges, tort (injury caused by negligent or intentional conduct), breach of fiduciary duty, fraud, or other wrongful actions. It includes any statutory, common law, or equitable claim. A dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement or claim is a "dispute" subject to this Arbitration Agreement. No dispute may be joined in arbitration with a dispute of any other person or arbitrated on class action basis. A dispute regarding a policy of title insurance is subject to the terms of the policy rather than this agreement.

**Binding Arbitration:**

Binding arbitration is a means of having one or more independent third parties (arbitrators) resolve disputes without using the court system, judges or juries. Arbitration is often a more cost effective and efficient means of resolving disputes. Either Company or I may submit a dispute to binding arbitration at any reasonable time, even if a lawsuit or other proceeding has been started. If either Company or I fail to submit to binding arbitration following a lawful demand, the party who fails to submit to arbitration shall bear the cost and expenses incurred by the party that demanded arbitration.

The arbitration shall be administered by the American Arbitration Association (the "AAA"), including the selection of arbitrators, pursuant to the commercial arbitration rules of the AAA, the AAA's supplementary procedures for consumer-related disputes and California Code of Civil Procedure sections 1281.8, 1282.2, 1282.6, 1283, 1283.05, and 1283.4, each of which is expressly incorporated herein and made a part of this Arbitration Agreement. The arbitration shall be located in the county where the customer's property was purchased. Each arbitration will be governed by the provisions of the Federal Arbitration Act (Title 9 of the United States Code) and, to the extent any provision of that Act is inapplicable, unenforceable, or invalid, the laws of the State of California shall govern this Arbitration Agreement and the arbitration proceeding. **Company agrees to pay all filing and hearing fees for any dispute which I file against Company, except where otherwise expressly provided in this Arbitration Agreement.** To find out how to initiate arbitration, I can call AAA at (800)778-7879 or check AAA's website at www.adr.org.

**Miscellaneous:**

All parties to the arbitration (the AAA, the arbitrator, Company, and I) shall take any action necessary, and reasonably possible, to assure that an arbitration proceeding started under this Arbitration Agreement is finished within one hundred eighty (180) days from the date the dispute is filed with the AAA. The arbitration proceeding shall be conducted at a location determined by the AAA in accordance with this Arbitration Agreement. All statutes of limitation applicable to any dispute shall apply to any arbitration between Company and me. If a dispute is properly filed in the Small Claims Court and the Small Claims Court has the jurisdiction to resolve the dispute, including all cross-claims and counterclaims, the party that demands arbitration and removes the dispute from Small Claims Court shall pay the administrative fee of the AAA and the fees, costs, and expenses of the arbitrator(s). This Arbitration Agreement shall survive the termination, amendment or expiration of any documents or relationships between the parties.

**Severability:**

If the arbitrator or any court determines that one or more of the terms of this Arbitration Agreement are unenforceable, such determination will not impair or affect the enforceability of the other terms of this Arbitration Agreement.

**Notice:**

WHEN YOU SIGN THIS ARBITRATION AGREEMENT, YOU ARE AGREEING THAT EVERY DISPUTE DESCRIBED ABOVE MAY BE DECIDED EXCLUSIVELY BY ARBITRATION AND THAT THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU AGREE THAT YOU WILL RECEIVE ALL THE RIGHTS AND BENEFITS OF ARBITRATION, BUT ARE GIVING UP RIGHTS YOU MIGHT HAVE TO LITIGATE THOSE CLAIMS AND DISPUTES IN A COURT OR JURY TRIAL, OR TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN CONNECTION WITH CLAIMS OR DISPUTES. NEITHER COMPANY NOR I SHALL BE ENTITLED TO JOIN OR CONSOLIDATE DISPUTES BY OR AGAINST OTHERS IN ANY ARBITRATION, OR TO INCLUDE IN ANY ARBITRATION ANY DISPUTE AS A REPRESENTATIVE OR MEMBER OF A CLASS, OR TO ACT IN ANY ARBITRATION IN THE INTEREST OF THE GENERAL PUBLIC OR IN ANY PRIVATE ATTORNEY GENERAL CAPACITY. IT IS IMPORTANT THAT YOU READ THIS ENTIRE AGREEMENT CAREFULLY BEFORE SIGNING IT.

**DATE:**_____

**SELLER(S):**                                          **BUYER(S):**

_____           _____
Angela Walton                                        Andy D. Nguyen

**DATE:**_____

**PICKFORD ESCROW COMPANY, INC.**

**BY:**_____
**ITS AUTHORIZED REPRESENTATIVE**

## CONTROLLED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT

The controlling principals of Berkshire Hathaway HomeServices California Properties have ownership interests in the following affiliated providers of escrow, mortgage, title, and homeowner Insurance.

California Title Company is a title company providing title insurance and title-related services. The controlling principals of Berkshire Hathaway HomeServices California Properties own 100% of an entity which owns 37.5% of California Title Company.

HomeServices Lending LLC provides mortgage lending services. The controlling principals of Berkshire Hathaway HomeServices California Properties own approximately 50% of Home Services Lending LLC.

Pickford Escrow Company and The Escrow Firm, Inc. provide professional escrow services for a wide variety of purchase, sale, financing and other transactions. The controlling principals of Berkshire Hathaway HomeServices California Properties own 100% of an entity which owns 100% of Pickford Escrow Company, Inc. and The Escrow Firm, Inc.

HomeServices Insurance Agency provides property, life, health, and casualty insurance for homeowners. The controlling principals of Berkshire Hathaway HomeServices California Properties own 100% of HomeServices Insurance Agency.

Berkshire Hathaway HomeServices California Properties will not be paid any referral fees or other compensation for referring business to our affiliates. The individual real estate agent with whom you are working is neither rewarded if you use our affiliated providers nor penalized if you choose other providers. Nevertheless, because of the ownership interests the principals of Berkshire Hathaway HomeServices California Properties have in our affiliates, such referrals may provide them with indirect financial or other benefits.

### ACKNOWLEDGEMENT OF RECEIPT OF DISCLOSURE

I/We have received the Controlled Business Arrangement Disclosure Statement of Pickford Escrow Company and The Escrow Firm.

Date:   October 27, 2017

_____

Angela Walton

_____

Andy D. Nguyen

## Privacy Policy

We value the trust you have placed in us and we intend to continue to earn your trust each day. That's why we welcome this opportunity to describe our privacy policies and the steps we take to protect your customer information. This document provides details about Pickford Services Company's privacy policies and procedures. In this document, "we", "our", and "us" refers to Pickford Services Company, Pickford Escrow Company, Inc. and/or The Escrow Firm, Inc.

## THIS IS OUR PLEDGE TO YOU
- We are committed to protecting your privacy at all times.
- We do not share customer information with outside companies for purposes of selling their products and services to you.
- We are committed to bringing you the services you need to successfully complete your real estate purchase, sale or finance transaction.
- We maintain security standards and procedures designed to protect to improve the protection of our information about you. Behind this pledge is a simple idea. We want you to know that you can count on us - to protect the privacy and security of your customer information, and to provide you with the responsive, professional service you deserve.

## OUR POLICIES REGARDING THE COLLECTION, USE AND DISCLOSURE OF CUSTOMER INFORMATION

Our goal is to provide you with the services you will need to successfully complete your real estate transaction. Along the way, we are committed to providing you with responsive, personalized service, and keeping you informed about new services that may be of immediate interest to you or new benefits that can help you derive the greatest value from your relationship with us. Customer information is at the heart of our ability to provide superior service to you. In the sections that follow, we describe the types of information that are collected, and how and why that information may be shared with others.

## INFORMATION COLLECTION

The primary reason that we collect and maintain customer information is to serve you and administer our customer relationship with you. This information may be collected from a variety of sources, such as:
- Information you provide to us on applications or forms
- Information we receive from an outside source such as a county recorder, mortgage company or your real estate agent; or
- Information about your transactions or experience with companies affiliated with us.

The information that we collect from these sources allows us to provide you with responsive and professional services to make sure the closing of your transaction is as trouble free as we can make it.

## WE DO NOT SELL YOUR PERSONAL INFORMATION TO ANYONE

We do not sell your personal information to anyone for the purpose of selling their products or services to you.

## WE LIMIT THE DISCLOSURE OF YOUR PERSONAL INFORMATION

We do not disclose your personal information to anyone other than to effect or administer the service or product you have requested from us. The purchase, sale or finance of real estate is a complex transaction which requires us to obtain certain information about you and the property you are selling or buying in order to complete the home sale or purchase transaction. We do not share your personal information, unless one of the following exceptions apply:
- We share a limited amount of your personal information with companies  that help us process or service your transaction. For example, we may share your name and the property address with a survey company or plat drawing company in order to collect information about the property in connection with providing you with a title insurance policy.
- We are permitted by law to share your personal information with others to protect the confidentiality of your records and to protect against claims, unauthorized transactions or other liabilities.
- We may also disclose personal information in limited circumstances where we believe in good faith it is required or permitted by law, for example: to cooperate with law enforcement authorities, regulatory authorities, or judicial process; and to resolve consumer disputes.

## INFORMATION DISCLOSED TO OUTSIDE PARTIES IN OTHER SITUATIONS

We also disclose certain customer information to government agencies, consumer reporting agencies, and other outside parties as permitted or required by the Federal Privacy Act and other applicable laws. These disclosures are made for specific, limited purposes, such as to verify individuals' identities (reducing fraud and identity theft), to meet customer

service expectations, or to make certain information a matter of public record (recording mortgages to let prospective buyers, title insurers, and others know about property liens).

## INFORMATION CONFIDENTIALITY AND SECURITY INFORMATION CONFIDENTIALITY AND PROTECTION PRACTICES

As we described in our Pledge to you, we are committed to preventing others from unauthorized access to your customer information, and we maintain procedures and technology designed for this purpose. We take several steps to protect the customer information we have about you, including the following:

- We update and test our technology on a regular basis in order to improve the protection of customer information.
- We require outside companies and independent contractors to whom we provide customer information, such as plat drawing companies, to enter into a confidentiality agreement that restricts the use of the information to those purposes and prohibits independent use of the information.
- We have internal procedures that limit access to customer information, such as procedures that require an employee to have a business need to access customer information. We maintain policies about the proper physical security of workplaces and records. Our physical, electronic, and procedural safeguards comply with federal regulations regarding the protection of customer information.

## INFORMATION INTEGRITY MEASURES

We protect the integrity of customer information about you through measures such as maintaining backup copies of account data in the event of power outages or other business interruptions, using computer virus detection and eradication software on systems containing customer data, installing computer hardware and software, and employing other technical means (known as "firewalls") to protect against unauthorized computer entry into systems containing customer information.

## HOW TO CONTACT US

If you have questions or concerns about this Privacy Policy, you can write to us at 12544 High Bluff Drive, Suite 420, San Diego, CA 92130, Attention: Privacy Compliance Officer; or you may call us at 858-792-6085.

I/We have received the Privacy Policy.

**SELLERS:**

**BUYERS:**

_____         _____
Angela Walton                       Andy D. Nguyen



**PICKFORD**
ESCROW COMPANY

16810 Ventura Blvd., 2nd Floor
Encino, CA 91436
Phone: (818) 990-6329    Fax: (818) 986-1083

## ANTI-FRAUD WARNING AND WIRING INSTRUCTIONS
### READ THIS WARNING CAREFULLY

**WARNING:**

During the course of this escrow, you may be required to wire significant sums of money to Pickford Escrow & The Escrow Firm.  We want to take all precautions necessary to help protect your funds from Wire Fraud (Hacking) attempts.

Pickford Escrow and The Escrow Firm are dedicated to ensure you DO NOT FALL PREY to this devastating crime which could result in TOTAL loss of your deposit, down payment, or any other sum you wire into escrow.

To this end Pickford Escrow & The Escrow Firm: (1) <u>Will NEVER send wiring instructions via email to anyone but you.</u>  The more recipients added to the distribution of your wire instructions, the more chances you have to be "hacked" (2) Will ALWAYS use a form of encryption/password protection when forwarding your wire instructions and (3) Will deliver, via Federal Express or courier only, your wire instructions to your agent only upon your written request.    THESE THREE SAFEGUARDS ARE FOR YOUR PROTECTION.  We are here to help you through this process and to help you reduce the risks inherent in wire fraud and wire interception.

YOU SHOULD NEVER TRANSMIT NONPUBLIC PERSONAL INFORMATION, SUCH AS CREDIT OR DEBIT CARD NUMBERS OR BANK ACCOUNT OR ROUTING NUMBERS, BY EMAIL OR OTHER UNSECURED ELECTRONIC COMMUNICATION. <u>EMAILS ATTEMPTING TO INDUCE FRAUDULENT WIRE TRANSFERS IN ESCROWS ARE COMMON AND MAY APPEAR TO COME FROM A TRUSTED SOURCE.</u>

If you receive any electronic communication directing you to transfer funds TO ANY BANK OTHER THAN COMERICA, EVEN IF THAT ELECTRONIC COMMUNICATION APPEARS TO BE FROM **YOUR ESCROW OFFICER OR AGENT, IMMEDIATELY CONTACT YOUR Escrow Officer before wiring funds as** such requests, even if they may otherwise appear to be from **your agent or escrow officer** are likely part of a scheme to defraud you by stealing funds from you or using your identity to commit a crime.

ACKNOWLEDGMENT: I/we have read this Anti-Fraud Warning and understand that Pickford Escrow & The Escrow Firm will send me/us encrypted or password protected wire instructions AND will only instruct such funds be wired to Comerica ONLY when funds are to be sent to Pickford Escrow & The Escrow Firm.  However, in certain Counties funds may need to be sent to the Title Company in order to close the transaction on time.  In such cases, you will be notified and the proper steps will be taken to ensure security. Any other instruction is suspect and I/we will notify Pickford Escrow & The Escrow Firm of the same before wiring any funds.

Date: _____

**SELLERS:**                                           **BUYERS:**

_____          _____
Angela Walton                                         Andy D. Nguyen

# EXHIBIT "C"

**A. SETTLEMENT STATEMENT (HUD-1)**

OMB Approval No. 2502-0265

**ESTIMATED**

Printed: October 10, 2017   04:24pm

| B. Type of Loan | | | | OMB Approval No. 2502-0265 |
|---|---|---|---|---|
| 1. []FHA 2. []RHS 3. []Conv. Unins. 4. []VA 5. []Conv. Ins. [] | 6. File Number 069-000069-KP | | 7. Loan Number | Mortgage Insurance Number |

C. Note: This form is furnished to give you a statement of the actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C.)" were paid outside of the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Andy D. Nguyen | Angela Walton 1114 W. Ralston St Ontario, CA  91762 | |

| G. PROPERTY LOCATION | H. Settlement Agent |
|---|---|
| 1114 W. Ralston St Ontario, CA  91762 | Pickford Escrow Company, Inc., Kelly Pacheco 16810 Ventura Blvd., 2nd Floor, Encino, CA 91436 Phone: (818) 990-6329 Fax: (818) 986-1083, tthomas@pickfordescrow.com |

| | Place of Settlement | I. Settlement Date |
|---|---|---|
| | 16810 Ventura Blvd., 2nd Floor Encino, CA 91436 | Close Date November 17, 2017 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract Sales Price | | 401. Contract sales price | 545,000.00 |
| 102. Personal Property | | 402. Personal property | |
| 103. Settl. Chrgs. to Borrower (line 1400) | 0.00 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments for items paid by seller in advance* | | *Adjustments for items paid by seller in advance* | |
| 106. City/Town Taxes | | 406. City/Town taxes | |
| 107. County Taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due From Borrower | 0.00 | 420. Gross Amount Due to Seller | 545,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposits or Earnest Money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan | | 502. Settl. chrgs. to seller (line 1400) | 40,840.10 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff to 1st payoff | 504,159.90 |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments for items unpaid by seller* | | *Adjustments for items unpaid by seller* | |
| 210. City/Town taxes | | 510. City/Town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. Total Paid By/For Borrower | 0.00 | 520. Total Reductions in Amount Due Seller | 545,000.00 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT FROM/TO SELLER** | |
| 301. Gross Amounts due from Borrower (line 120) | 0.00 | 601. Gross amount due to Seller (line 420) | 545,000.00 |
| 302. Less amounts paid by/for Borrower (line 220) | 0.00 | 602. Less reductions in amount due Seller (line 520) | 545,000.00 |
| 303. Cash [ ] From Borrower [ ] To Borrower | 0.00 | 603. Cash [ ] To Seller [ ] From Seller | 0.00 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data.  This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.  No confidentiality is assured; this disclosure is mandatory.  This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

Party Paying POC Legend - (B*) Buyer/Borrower (S*) Seller (L*) Lender (LB*) Loan Broker                    [B]Buyer/Borrower   [S]Seller

Escrow No.: 069-000069-KP

Printed: October 10, 2017  04:24pm

### L. SETTLEMENT STATEMENT

| | | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|---|
| **700.** | **TOTAL REAL ESTATE BROKER FEES** | | | |
| | Division of commission (line 700) as follows: | | | |
| 701. | California Trust Realty $19,075.00 | | | |
| 702. | California Trust Realty $13,625.00 | | | |
| 703. | Commission paid at settlement | | | 32,700.00 |
| 704. | | | | |
| **800.** | **ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. | Our origination charge | (from GFE #1) | | |
| 802. | Your credit or charge (points) for the specific interest rate chosen | (from GFE #2) | | |
| 803. | Your adjusted origination charges | (from GFE #A) | | |
| 804. | Appraisal fee | (from GFE #3) | | |
| 805. | Credit report | (from GFE #3) | | |
| 806. | Tax service | (from GFE #3) | | |
| 807. | Flood certification | (from GFE #3) | | |
| 808. | Condo certification | (from GFE #3) | | |
| 809. | | | | |
| 810. | | | | |
| 811. | | | | |
| **900.** | **ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. | Daily interest charges from | (from GFE #10) | | |
| 902. | Mortgage insurance premium for | (from GFE #3) | | |
| 903. | Homeowner's insurance | (from GFE #11) | | |
| 904. | | | | |
| 905. | | | | |
| **1000.** | **RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. | Initial deposit for your escrow account | (from GFE #9) | | |
| 1002. | Homeowner's Insurance | | | |
| 1003. | Mortgage insurance | | | |
| 1004. | Property taxes | | | |
| 1005. | City taxes | | | |
| 1006. | Assessments | | | |
| 1007. | Misc. Impound | | | |
| 1008. | | | | |
| 1009. | Aggregate Adjustment | | | |
| **1100.** | **ESCROW AND TITLE CHARGES** | | | |
| 1101. | Title services and lender's title insurance | (from GFE #4) | | |
| 1102. | Settlement or closing fee to Pickford Escrow Company, Inc. | | | 2,390.00 |
| 1103. | Owner's title insurance to California Title Company | (from GFE #5) | | 1,764.00 |
| 1104. | Lender's title insurance (plus Endorsements) | | | |
| 1105. | Lender's title policy limit $ | | | |
| 1106. | Owner's title policy limit $ | | | |
| 1107. | Agent's portion of the total title insurance premium $ | | | |
| 1108. | Underwriter's portion of the total title insurance premium $ | | | |
| 1109. | Sub Escrow Fee to California Title Company | | | 62.50 |
| 1110. | Wire Fee to California Title Company | | | 45.00 |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| 1114. | | | | |
| 1115. | | | | |
| **1200.** | **GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. | Government recording charges | (from GFE #7) | | 9.00 |
| 1202. | Deed $  Mortgage $  Release $ | | | |
| 1203. | Transfer Tax | (from GFE #8) | | |
| 1204. | City/County tax/stamps | | | 599.50 |
| 1205. | State tax/stamps | | | |
| 1206. | | | | |
| **1300.** | **ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. | Required services that you can shop for | (from GFE #6) | | |
| 1302. | Current Taxes 1st 17-18  ESTIMATED to California Title Company | | | 2,970.10 |
| 1303. | for: Retrofitting to ESTIMATE | | | 300.00 |
| 1304. | | | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| **1400.** | **TOTAL SETTLEMENT CHARGES (ENTER ON LINES 103 SECTION J AND 502, SECTION K)** | | 0.00 | 40,840.10 |

Party Paying POC Legend - (B*) Buyer/Borrower (S*) Seller (L*) Lender (LB*) Loan Broker            [B]Buyer/Borrower   [S]Seller

**PAYOFF BREAKDOWN(S)**

| | Borrower Debit | Borrower Credit | Seller Debit | Seller Credit |
|---|---|---|---|---|
| Payoff to 1st payoff $504,159.90 (to line 504) | | | | |
| Principal Balance | | | 504,159.90 | |

# EXHIBIT "D"

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | Angela D. Walton |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number (if known) | 2:13-bk-34917-WB |

Check if this is:

☐ An amended filing

■ A supplement showing postpetition chapter 13 income as of the following date:
9/05/2017
MM / DD / YYYY

# Official Form 106I
# Schedule I: Your Income

12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:    Describe Employment

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| 1. | Fill in your employment information.<br><br>If you have more than one job, attach a separate page with information about additional employers.<br><br>Include part-time, seasonal, or self-employed work.<br><br>Occupation may include student or homemaker, if it applies. | | |
| | Employment status | ■ Employed<br>☐ Not employed | ☐ Employed<br>☐ Not employed |
| | Occupation | Lieutenant | |
| | Employer's name | Los Angeles County | |
| | Employer's address | 11730 Alameda Street<br>Lynwood, CA | |
| | How long employed there? | 19 years | |

## Part 2:    Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2. | $ 15,977.55 | $ N/A |
| 3. | Estimate and list monthly overtime pay. | 3. | +$ 0.00 | +$ N/A |
| 4. | Calculate gross income. Add line 2 + line 3. | 4. | $ 15,977.55 | $ N/A |

Debtor 1  Angela D. Walton _____  Case number *(if known)*  2:13-bk-34917-WB

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| Copy line 4 here ..................................................... | 4. | $ 15,977.55 | $ N/A |

5. **List all payroll deductions:**

| | | | | |
|---|---|---|---|---|
| 5a. | Tax, Medicare, and Social Security deductions | 5a. | $ 4,109.72 | $ N/A |
| 5b. | Mandatory contributions for retirement plans | 5b. | $ 1,118.89 | $ N/A |
| 5c. | Voluntary contributions for retirement plans | 5c. | $ 0.00 | $ N/A |
| 5d. | Required repayments of retirement fund loans | 5d. | $ 469.50 | $ N/A |
| 5e. | Insurance | 5e. | $ 536.52 | $ N/A |
| 5f. | Domestic support obligations | 5f. | $ 0.00 | $ N/A |
| 5g. | Union dues | 5g. | $ 636.00 | $ N/A |
| 5h. | Other deductions. Specify: _____ | 5h.+ | $ 0.00 | + $ N/A |

6. **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h.  6.  $ 6,870.63    $ N/A

7. **Calculate total monthly take-home pay.** Subtract line 6 from line 4.  7.  $ 9,106.92    $ N/A

8. **List all other income regularly received:**

| | | | | |
|---|---|---|---|---|
| 8a. | **Net income from rental property and from operating a business, profession, or farm** Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ 850.00 | $ N/A |
| 8b. | Interest and dividends | 8b. | $ 0.00 | $ N/A |
| 8c. | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ 0.00 | $ N/A |
| 8d. | Unemployment compensation | 8d. | $ 0.00 | $ N/A |
| 8e. | Social Security | 8e. | $ 0.00 | $ N/A |
| 8f. | **Other government assistance that you regularly receive** Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: | 8f. | $ 0.00 | $ N/A |
| 8g. | Pension or retirement income | 8g. | $ 0.00 | $ N/A |
| 8h. | Other monthly income. Specify: _____ | 8h.+ | $ 0.00 | + $ N/A |

9. **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h.  9.  $ 850.00    $ N/A

10. **Calculate monthly income.** Add line 7 + line 9.  10.  $ 9,956.92  + $ N/A  = $ 9,956.92
Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse.

11. **State all other regular contributions to the expenses that you list in *Schedule J*.**
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J*.
Specify: _____  11.  + $ 0.00

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities and Related Data*, if it applies  12.  $ 9,956.92

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**
  ☑ No.
  ☐ Yes. Explain: [_____]

**Fill in this information to identify your case**

| | |
|---|---|
| Debtor 1 | Angela D. Walton |
| Debtor 2<br>(Spouse, if filing) | |
| United States Bankruptcy Court for the: | CENTRAL DISTRICT OF CALIFORNIA |
| Case number<br>(If known) | 2:13-bk-34917-WB |

Check if this is:

☐ An amended filing

■ A supplement showing postpetition chapter
13 expenses as of the following date:
  9/05/2017
  MM / DD / YYYY

## Official Form 106J
## Schedule J: Your Expenses
12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1**    **Describe Your Household**

1.    **Is this a joint case?**

■ No. Go to line 2.

☐ Yes. Does Debtor 2 live in a separate household?

  ☐ No

  ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.    **Do you have dependents?**    ■ No

Do not list Debtor 1 and
Debtor 2.

Do not state the
dependents names.

☐ Yes. Fill out this information for each dependent..............

| Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|
| | | ☐ No<br>☐ Yes |
| | | ☐ No<br>☐ Yes |
| | | ☐ No<br>☐ Yes |
| | | ☐ No<br>☐ Yes |

3.    **Do your expenses include expenses of people other than yourself and your dependents?**    ■ No
☐ Yes

**Part 2**    **Estimate Your Ongoing Monthly Expenses**

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

|  | Your expenses |
|---|---|

4.    The rental or home ownership expenses for your residence. Include first mortgage payments and any rent for the ground or lot.    4. $            2,394.75

If not included in line 4:

| | | | |
|---|---|---|---|
| 4a. | Real estate taxes | 4a. $ | 0.00 |
| 4b. | Property, homeowner's, or renter's insurance | 4b. $ | 0.00 |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. $ | 50.00 |
| 4d. | Homeowner's association or condominium dues | 4d. $ | 0.00 |
| 5. | Additional mortgage payments for your residence, such as home equity loans | 5. $ | 0.00 |

Debtor 1  Angela D. Walton                                    Case number (if known)  2:13-bk-34917-WB

6.  Utilities:
|  | | | | |
| 6a. | Electricity, heat, natural gas | 6a. | $ | 90.00 |
| 6b. | Water, sewer, garbage collection | 6b. | $ | 180.00 |
| 6c. | Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | 250.00 |
| 6d. | Other. Specify: | 6d. | $ | 0.00 |
| 7. | **Food and housekeeping supplies** | 7. | $ | 350.00 |
| 8. | **Childcare and children's education costs** | 8. | $ | 0.00 |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | 150.00 |
| 10. | **Personal care products and services** | 10. | $ | 100.00 |
| 11. | **Medical and dental expenses** | 11. | $ | 558.00 |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ | 550.00 |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | 75.00 |
| 14. | **Charitable contributions and religious donations** | 14. | $ | 134.00 |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| 15a. | Life insurance | 15a. | $ | 0.00 |
| 15b. | Health insurance | 15b. | $ | 0.00 |
| 15c. | Vehicle insurance | 15c. | $ | 220.00 |
| 15d. | Other insurance. Specify: | 15d. | $ | 0.00 |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. | $ | 0.00 |
| 17. | **Installment or lease payments:** | | | |
| 17a. | Car payments for Vehicle 1 | 17a. | $ | 0.00 |
| 17b. | Car payments for Vehicle 2 | 17b. | $ | 0.00 |
| 17c. | Other. Specify: | 17c. | $ | 0.00 |
| 17d. | Other. Specify: | 17d. | $ | 0.00 |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. | $ | 0.00 |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | | |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | | |
| 20a. | Mortgages on other property | 20a. | $ | 0.00 |
| 20b. | Real estate taxes | 20b. | $ | 0.00 |
| 20c. | Property, homeowner's, or renter's insurance | 20c. | $ | 0.00 |
| 20d. | Maintenance, repair, and upkeep expenses | 20d. | $ | 0.00 |
| 20e. | Homeowner's association or condominium dues | 20e. | $ | 170.00 |
| 21. | Other: Specify:   Emergency Expenses | 21. | +$ | 75.00 |
| | Pet Food & Expenses | | +$ | 70.00 |
| | Uniform cleaning and boot care | | +$ | 120.00 |
| | Uniform/Boots Purchase Expense | | +$ | 190.00 |
| | Dental work | | +$ | 114.00 |

22.  **Calculate your monthly expenses**

| | | | |
| --- | --- | --- | --- |
| 22a. | Add lines 4 through 21. | $ | 5,840.75 |
| 22b. | Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | $ | |
| 22c. | Add line 22a and 22b. The result is your monthly expenses. | $ | 5,840.75 |

23.  **Calculate your monthly net income.**

| | | | |
| --- | --- | --- | --- |
| 23a. | Copy line 12 (*your combined monthly income*) from Schedule I. | 23a. $ | 9,956.92 |
| 23b. | Copy your monthly expenses from line 22c above. | 23b. -$ | 5,840.75 |
| 23c. | Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. $ | 4,116.17 |

24.  **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.

☐ Yes.   | Explain here: Debtor is currently in therapy due to stress on her job as a LA County sherriff.  It is not covered by insurance and she must pay out of pocket except for $2,400 per year. Cost is $758 per month.  Also needs dental work and will be approximately $114.00 per month. |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

15233 Ventura Blvd., Suite 250, Sherman Oaks, CA 91403

A true and correct copy of the foregoing document entitled: **DEBTOR'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY UNDER LBR 3015-1 (p)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _11/28/2017_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Nancy Curry (TR):            ecfnc@trustee13.com
United States Trustee (LA):   ustpregion16.la.ecf@usdoj.gov
Matthew D. Resnik:           matt@srhlawfirm.com
Wells Fargo Bank NA          oneika.s.white-dovlo@wellsfargo.com, corey.phuse@wellsfargo.com,
                             angela.m.fowler@wellsfargo.com, tara.m.evans@wellsfargo.com,
                             john.chandler@wellsfargo.com, BRUCE.BROWN2@WELLSFARGO.COM

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _11/28/2017_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _11/28/2017_, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Judge's Copy:  Honorable Julia W. Brand 255 E. Temple Street, Suite 1382 / Courtroom 1375, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _11/28/2017_ | Leda Lopez | _[signature]_ |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## ADDITIONAL SERVICE INFORMATION:

Debtor(s):
Angela D. Walton
1114 W. Ralston Street Apt A
Ontario, CA 91762

Chapter 13 Trustee  (Personal
Service)
Nancy K Curry
1000 Wilshire Blvd., Ste 870
Los Angeles, CA 90017

Office of the United States Trustee
(Personal Service)
915 Wilshire Blvd., Ste 1850
Los Angeles, CA 90017

Wells Fargo Home Mortgage
c/o Wells Fargo Bank NA (Statement)
(Certified Mail)
Attn: BK Dept. MAC#T7416-023
4101 Wiseman Blvd.
San Antonio, TX 78251
Attn: Timothy J. Sloan, President &
CEO

Wells Fargo Bank, N.A./Wells Fargo
Home Mortgage  (PACER) (Certified
Mail)
MAC X7801-014
3476 Stateview Blvd.
Fort Mill, SC 29715
Attn: Timothy J. Sloan, President &
CEO

Wells Fargo Bank NA (PACER)
(Certified Mail)
Attn: Bruce E Brown, John Chandler,
Angela M Fowler, Tara Evans, Corey
Phuse, Oneika White-Dovlo
1100 Corporate Center Dr
Raleigh, NC 27607
Attn: Timothy J. Sloan, President &
CEO

Wells Fargo Bank, N.A. (Claim)
(Certified Mail)
C/O Wells Fargo Bank, N.A.,as
servicer
Default Document Processing N9286-
01Y
1000 Blue Gentian Road
Eagan, MN 55121-7700
Attn: Timothy J. Sloan, President &
CEO

Wells Fargo Bank, N.A. (FDIC & Entity
Address) (Certified Mail)
101 N. Phillips Avenue
Sioux Falls, South Dakota 57104
Attn: Timothy J. Sloan, President &
CEO

Agent for Service of Process for Wells
Fargo Bank, N.A. (Certified Mail)
CSC - Lawyers Incorporating Service
2710 Gateway Oaks Drive
Suite 150 N
Sacramento, CA 95833

Alessi Koenig
9500 W. Flamingo Rd, Ste. 205
Las Vegas, NV 89147

BSI Financial Services
1425 Greenway Dr., Suite 400
Irving, TX 75038

Capital One Bank
by American InfoSource LP as agent
PO Box 71083
Charlotte, NC 28272-1083

Chase Home Mortgage
Mail Code LA4-5555
700 Kansas Lane
Monroe, LA 71203

Copper Sands Homeowners
9500 W. Flamingo Rd, Ste. 205
Las Vegas, NV 89147

Federal National Mortgage Assoc.
c/o Seterus, Inc.
PO BOX 2206
Grand Rapids, MI 49501

Franchise Tax Board
Attn: Bankruptcy Unit
P.O. Box 2952
Sacramento, CA 95812-2952

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Jefferson Capital System
PO Box 7999
Baysideloanscom
Saint Cloud, MN 56302-9617

JP Morgan Chase Bank, N.A.
Katherine Kane, Esq.
1009 Wilshire Boulevard
Suite 221
Santa Monica, CA 90401

Mercantile
6341 Inucon Drive East
re: BoA/Galaxy
Sanborn, NY 14132

Mercantile
6341 Inducon Drive East
re: Citibank/Galaxy Asset
Sanborn, NY 14132

Neiman Marcus
P.O. Box 62016
Dallas, TX 75262

Quality Loan Services
2141 5th Avenue
TS NV-11-480025-TC
San Diego, CA 92101

Quantum 3 Group LLC
MOMA Funding LLC
PO Box 788
Bank of America
Kirkland, WA 98083-0788

Quantum 3 Group LLC
MOMA Funding LLC
PO Box 788
Citibank (South Dakota) NA
Kirkland, WA 98083-0788